UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HILARIO MEDINA,<br><br>                Plaintiff,<br><br>     vs.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security Administration,<br><br>                Defendant. | CASE NO. CV 04-02791 (RZ)<br><br>MEMORANDUM OPINION AND ORDER |

        This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings, the defendant has filed the certified transcript of the administrative record (cited as "AR"), and each party has filed a supporting memorandum. After reviewing the matter, the Court concludes that the decision of the Commissioner should be affirmed.

///

///

# I.
# BACKGROUND

Plaintiff Hilario Medina applied for Supplemental Security Income benefits on September 30, 2001. He alleged that he had been unable to work beginning January 1, 1999 due to pain in his back, feet, head and neck, cramps in his hands, and other maladies. The Social Security Administration denied the application both initially and on reconsideration. Plaintiff then proceeded to an administrative hearing on June 19, 2003. The Administrative Law Judge heard testimony from Plaintiff, a vocational expert and a medical expert, and received exhibits into evidence, but determined that Plaintiff was not disabled. [AR 20-27] The Appeals Council denied review [AR 5-6], thereby making the decision of the Administrative Law Judge the decision of the Commissioner. 20 C.F.R. § 404.981; *Sims v. Apfel,* 530 U.S. 103, 106-07 (2000). Plaintiff timely sought review in this Court.

# II.
# HEEL PAIN

Plaintiff asserts that the Administrative Law Judge adopted unsupported testimony by the non-examining medical expert, William Cable, M.D., that Plaintiff's heel pain should not be considered in calculating his Residual Function Capacity ("RFC"), because that pain could not reasonably be expected to last 12 months or longer. [AR 259] But substantial evidence supports Dr. Cable's opinion (and, therefore, supports the Administrative Law Judge's reliance on it). A medical report dated December 19, 2002 reflects that Plaintiff's "chief complaint" at that time was heel pain that thus far had lasted *four months*. [AR 179] Plaintiff was referred to a podiatrist, whose difficult-to-read treatment notes dated December 26, 2002 appear to indicate that Plaintiff received one or two prescriptions to address his foot pain. Plaintiff cites no medical reports after these December 2002 notations of ongoing heel pain that is not adequately addressed with medication. On the contrary, although Plaintiff testified at the hearing that his heel pain

continued [AR 254], the Administrative Law Judge pointedly asked Plaintiff's counsel, "is there any recent documentation that the spur is still a problem?" and received the straightforward answer, "No." [AR 259] In another effort to meet the 12-months-duration requirement, Plaintiff also argues that a report on an x-ray taken two years earlier showed a "incidentally noted" plantar spur, presumably the same one later causing the heel pain in 2002, but the spur's existence *per se* in 2000 does not demonstrate that Plaintiff immediately began suffering pain from it. [AR 129]

### III.
### PARTIAL DISCOUNTING OF PLAINTIFF'S PAIN TESTIMONY

Plaintiff challenges the Administrative Law Judge's conclusion that Plaintiff's testimony of pain in various areas of his body was "only partially credible," a conclusion influencing his RFC assessment. [AR 24] The judge explained this conclusion as follows:

> The claimant appears to exaggerate his symptoms[,] and this reduces his credibility. Mr. Medina alleges disability due in part to left upper extremity pain and hand cramping. [But] the claimant has not been treated for left upper extremity pain since September 2002, and no physician has noted cramping of the hands.
>
> The claimant's reported daily activities are inconsistent with his assertion that he is disabled. While the claimant alleges disability beginning January 1999, in March 2000 he reported that he plays "a lot" of baseball. In December 2000, the claimant reported that he sustained an injury while playing baseball. Mr. Medina testified that he walks and [that] he uses public transportation to go to the mall.

> In September 2001, the claimant reported that he stopped working due to illness ([AR 94 ("illnesses" on cited page)]). At the hearing, Mr. Medina testified that he stopped working because the company he worked for went out of business. [AR 252.]

[AR 24 (some internal citations omitted)]

Generally, once a claimant has supplied objective medical evidence of a malady that "could reasonably be expected to produce" *some* degree of pain or other subjectively-reported symptoms, the Administrative Law Judge may discount the claimant's testimony about the degree of pain – and how that pain affects the claimant's ability to work – only if the judge supplies specific, cogent reasons supported by substantial evidence in the record. *See Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (*en banc*); *Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996).

Here, the test is satisfied because substantial evidence supports at least three of the above four grounds cited by the Administrative Law Judge for partially discounting the pain testimony. First, "[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects. 20 C.F.R. § 404.1529(c)(2)." *Rollins v. Massanari*, 261 F. 3d 853, 857 (9th Cir. 2001). The Administrative Law Judge properly pointed out that no medical evidence supported Plaintiff's assertions of disabling left-upper-extremity pain and hand cramping. Indeed, as the judge noted, two physicians – to each of whom Plaintiff had an opportunity to express his pain symptoms – independently concluded that Plaintiff could perform medium-exertion work, albeit with some restrictions [AR 130-133 (consultative orthopedist), 136-43 (state-agency examiners)], and Dr. Cable essentially agreed, based on his review of those reports and other records [AR 257-58]. Moreover, the Administrative Law Judge did not rest his pain-testimony critique solely on a lack of medical evidence;

he went on to point out other specific reasons, supported by substantial evidence as discussed below.

Second, Plaintiff indeed stated in his Disability Report, as the Administrative Law Judge remarked, that he "could not continue to work" "due to illnesses" as of *January 1, 1999*, contrary to Plaintiff's current argument that he had asserted that only his "impairments," not his full-blown "disability," started in 1999. [AR 94; Pl.'s Br. at 8] Given this assertion of disability at the outset of 1999, the Administrative Law Judge fairly considered, as factors negatively impacting Plaintiff's credibility, Plaintiff's assertions (1) in March 2000 that he was playing "a lot" of baseball and (2) in December 2000 that he had been injured while playing the same sport. A claimant who alleged he suffered from a combination of disabling pain – not adequately controlled with medication – ordinarily would not choose to seek out frequent, on-field participation in sports such as baseball.

The third factor cited by the Administrative Law Judge, namely Plaintiff's frequent walking, is less convincing. Plaintiff testified that he often walks, including to the bus stop to go to the mall, where presumably he walked further, among the shops, and back to the bus stop. The Administrative Law Judge believed this stood somewhat at odds with his claim of disabling pain. The undersigned is not so sure. Plaintiff pointedly noted, in discussing his walking habits, that he had to take breaks after "about a couple of blocks," and thereafter could walk further. The Court need not decide, however, whether this borderline issue favors Plaintiff, because even if it does, the other three factors he challenges do not.

Fourth, the Administrative Law Judge properly considered Plaintiff's possibly conflicting reasons for ending gainful employment. On the one hand, as noted above, Plaintiff stated on his Disability Report that his injuries prevented him from working as of January 1, 1999. On the other hand, his primary response to the Administrative Law Judge's hearing question, "Why did you stop working?" was, "The company broke down. They went bankrupt." Only later, in response to a follow-up question, "Why did you not

get a job somewhere else?" did Plaintiff state, "Actually that's when I started hurting my back," adding that he tried a month's work as a gardener before concluding that it required too much bending over. [AR 252] This inconsistency reasonably can support the Administrative Law Judge's conclusion that Plaintiff, at times, was not fully candid.

## IV.
## LIMITATION ON CROSS-EXAMINATION OF MEDICAL EXPERT

Plaintiff argues that the Administrative Law Judge improperly cut off some of Plaintiff's attorney's cross-examination of the medical expert, William Cable, M.D. As legal authority, Plaintiff cites *Solis v. Schweiker*, 719 F.2d 201 (9th Cir. 1983). In *Solis*, the Administrative Law Judge initially considered four doctors' medical reports. Three doctors found Arnold Solis at least temporarily disabled but disagreed among themselves as to the duration of that disability; a fourth doctor, Solis's treating physician, believed he was permanently disabled. Against that background, the Administrative Law Judge obtained a fifth report, paid for by the Social Security Administration, from a fifth doctor, one Dr. Starr. When Dr. Starr's report concluded that Arnold Solis was not disabled, Solis's attorney naturally sought to have Dr. Starr subpoenaed for cross examination. But the Administrative Law Judge denied the request, instead allowing Solis's attorney to submit written interrogatories to the doctor. The Administrative Law Judge went on to deny benefits, based largely on Dr. Starr's non-disability findings. On appeal, the Ninth Circuit reversed. It held that the complete denial of cross examination, where the witness was so pivotal (for he was the only one of five doctors affirmatively supporting non-disability), denied Solis procedural due process.

But *Solis* is inapposite here for two independent reasons. The first is that the testimony of the medical expert in this case, Dr. Cable, while important, cannot reasonably be compared to the essential testimony of Dr. Starr in *Solis*. Dr. Starr supplied the *only* clear evidence supporting non-disability, whereas several reports in Plaintiff's record –

reports reviewed by Dr. Cable as the principal basis for his testimony – supplied such evidence here.

Second, and more importantly, Plaintiff was not denied all cross-examination of Dr. Cable. On the contrary, Plaintiff's counsel cross-examined Dr. Cable for several minutes; the transcription of that examination fills three and a half pages of the administrative record, although those pages also include substantial input from the Administrative Law Judge. [AR 258-261] Posed with several questions about whether Plaintiff would benefit from, or instead be further injured by, "medium work" and "vigorous physical activity," Dr. Cable repeatedly declined to favor either possibility, explaining that such "hypotheticals aren't really answered by what's in the record." "[M]edically," he added, "it could be either[,] or somewhere in the middle." [AR 261] At that point, the Administrative Law Judge decided to end the cross-examination, perhaps because Dr. Cable had indicated the line of inquiry was unanswerable based on the records he had reviewed. That decision was not error, and *Solis* does not counsel otherwise.

## V.

## PLAINTIFF'S ALLEGED ILLITERACY

Plaintiff's final argument is that the alternate occupations identified for him by the vocational expert are inappropriate because (1) those jobs, according to the Dictionary of Occupational Titles ("DOT"), require knowledge of at least 2,500 words, and (2) Plaintiff testified that he is functionally illiterate in English and Spanish, despite having completed the tenth grade. The Court disagrees. As a preliminary matter, a claimant may have "knowledge of at least 2,500 words" in the sense of being able to speak them and to understand them when spoken; "knowledge" does not mean "ability to read and write" that many words. In any event, the Administrative Law Judge's key hypothetical question directed the vocational expert to posit a claimant "with a tenth grade education, who is not literate at a commercially competitive level in any language." [AR 262-63] Because this question accurately framed Plaintiff's literacy limitations, the vocational expert's answer

supplies substantial evidence for the literacy portion of the Administrative Law Judge's non-disability finding. Plaintiff asserts that *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001), supports his argument. It does not. Maria Pinto attended school through only the third grade, not the tenth; she spoke "very little English," in contrast to Plaintiff, who spoke and understood English without apparent difficulty at the administrative hearing. (Indeed, Plaintiff's counsel answered "Yes," without any qualification, when asked at the hearing whether Plaintiff "speak[s] and understand[s] English.") The Ninth Circuit's decision in her case thus supplies no authority for remanding, as occurred in *Pinto*, for further consideration of how Plaintiff's alleged illiteracy impacts his ability to perform the jobs mentioned by the vocational expert.

## VI.
## CONCLUSION

In accordance with the foregoing, the decision of the Commissioner is affirmed.

DATED: August __4__, 2005

/s/
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE